**William Ernest HOFFMAN, Appellant,**

v.

**UNITED STATES of America,**
Appellee.

No. 15362.

United States Court of Appeals
Ninth Circuit.

May 2, 1957.

Rehearing Denied June 5, 1957.

William Ernest Hoffman in pro. per.

Laughlin E. Waters, U. S. Atty., Louis Lee Abbott, Thomas Ludlow, Jr., Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before STEPHENS, FEE and BARNES, Circuit Judges.

BARNES, Circuit Judge.

Appellant was indicted by a grand jury May 20, 1955, charged with seven

counts of violating Title 18 U.S.C.A. § 495, by forging the endorsement on seven Government checks.[1]

Appellant was tried before a jury and found guilty on six counts. Count III was dismissed. He was sentenced to five years imprisonment on Count I; two and one-half years on Count II; to run consecutively; five years as to Counts IV, V and VI, each to run concurrently with Count I; five years on Count VII, suspended and with probation granted thereon commmencing at the expiration of the term served on Counts I and II.

Title 18 U.S.C.A. § 495 reads in pertinent part as follows:

"Whoever falsely makes, alters, forges, or counterfeits any deed, power of attorney, order, certificate, receipt, contract, *or other writing,* for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States or any officers or agents thereof, any sum of money * * * Shall be fined not more than $1000 or imprisoned not more than ten years, or both. June 25, 1948, c. 645, 62 Stat. 711." [Emphasis added.]

The section quoted, enacted June 25, 1948 (c. 645, 62 Stat. 711), was based on Title 18 U.S.C.A. (1940 Ed.) § 73.

Appellant took no appeal from the judgment of conviction. This is an appeal from the order of the lower court, denying appellant's motion filed under 28 U.S.C.A. § 2255, to correct the sentence entered against appellant.

■ The appellant appears here in propria persona. Although he sets forth his views on the merits of his contentious with force, his briefs reflect the unfamiliarity with legal principles and procedures that so often marks and handicaps the layman counsel. But where no trained advocate is present—and this situation generally arises in criminal proceedings—the court itself undertakes to assure the litigant that no meritorious case be lost because of a lack of legal skill. Briefs are scanned with unjaundiced eyes and technical compliance with the Rules of Court is not stringently enforced. The dominant theme is liberality. Darr v. Burford, 339 U.S. 200, 203, 70 S.Ct. 587, 94 L.Ed. 761. Accordingly, we do not regard the infirmities in appellant's Designation of the Record on Appeal and his Briefs, (Rule 18(2) (d) of this court, 28 U.S.C.A.) as sufficient to preclude further consideration of this appeal. Were he not acting in propria persona we might well do so.

The gist of appellant's first argument is that he was convicted and sentenced on Counts I, IV, V and VI under the wrong statute. The allegedly inapplicable statute (18 U.S.C.A. § 495), has been hereinabove quoted. The check in Count I is denominated on its face a "compen-

[1]. These counts were:

Count I. On November 5, 1954, forging the endorsement and signature of the payee of a certain United States Treasury check, payable to Gertrude E. Carnes, in the sum of $69.60.

Count II. On August 9, 1954, forging the endorsement and signature of the payee of a certain United States Treasury check, payable to Joyce J. Davis, in the sum of $185.00.

Count III. On June 18, 1954, forging the endorsement and signature of the payee of a certain United States Treasury check, payable to Virgilio Campos, in the sum of $110.00. (This count was dismissed before judgment.)

Count IV. On November 8, 1954, forging the endorsement and signature of the payee of a certain United States Treasury check, payable to Joyce Neal, in the sum of $93.00.

Count V. On November 8, 1954, forging the endorsement and signature of the payee of a certain United States Treasury check, payable to Joyce Neal, in the sum of $39.00.

Count VI. On October 8, 1954, forging the endorsement and signature of the payee of a certain United States Treasury check, payable to Marie M. Lagan, in the sum of $49.90.

Count VII. On July 9, 1954, forging the endorsement and signature of the payee of a certain United States Treasury check, payable to James J. Sheil, in the sum of $62.50.

sation" check. The other three checks in question appear on their face to be Social Security checks. Relying principally on United States v. Wilson, 1874, 28 Fed.Cas. page 720, No. 16,732, appellant claims that these four checks were "pension-type checks," and therefore that the governing statute is 38 U.S.C.A. § 128, which reads as follows:

"Whoever shall forge the endorsement of the person to whose order any pension check shall be drawn, or whoever with the knowledge that such endorsement is forged shall utter such check, or whoever, by falsely personating such person, shall receive from any person, firm, corporation, or officer or employee of the United States the whole or any portion of the amount represented by such check, shall upon conviction be punished by a fine of not more than $1,000 or be imprisoned not more than five years, or both. Aug. 17, 1912, c. 301, § 4, 37 Stat. 313."

The theory is that the comprehensive words "other writing" as used in 18 U.S.C.A. § 495 embraces all instruments other than pension checks, which are specifically covered by 38 U.S.C.A. § 128.

■ We are met at the threshold by the question of whether appellant can urge the above point at this time. As heretofore noted, appellant does not challenge the validity of Count II. On Count II, appellant was sentenced to two and one-half years. He was sentenced on September 15, 1955. If the sentence under Counts I, IV, V and VI should be held invalid, then appellant would be deemed to have been confined on the sentence of Count II as of the date of the inception of the sentence under the challenged first count. Blitz v. United States, 153 U.S. 308, 318, 14 S.Ct. 924, 38 L.Ed. 725; McNealy v. Johnston, 9 Cir., 100 F.2d 280. Granting appellant the maximum possible good time and industrial work allowances,[2] he would still not be eligible for release under the sentence imposed on Count II. Can he then avail himself of § 2255 when, even if he were completely successful in all his contentions, it would not be possible to release him? Must he first wait until the expiration of the time he would be required to serve under the admittedly valid sentence before he can question the validity of the other sentences?

■ Section 2255 was enacted "to meet practical difficulties that had arisen in administering the habeas corpus jurisdiction of the federal courts * * * [and] the sole purpose was to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum." United States v. Hayman, 342 U.S. 205, 219, 72 S.Ct. 263, 272, 96 L. Ed. 232. It did not create new substantive rights or broaden the scope of habeas corpus proceedings. Accordingly, the use of § 2255 is subject to the same requirements and limitations as was habeas corpus, and this Court has so held. Crow v. United States, 9 Cir., 186 F.2d 704.

Habeas corpus has traditionally been limited to testing the lawfulness of detention.

"There is no warrant * * * for its use to invoke judicial determination of questions which could not affect the lawfulness of the custody and detention, and no suggestion of such a use has been found in the commentaries on the English common law." McNally v. Hill, 293 U.S. 131, 137, 55 S.Ct. 24, 27, 79 L. Ed. 238.

Likewise, it has been held that § 2255 may not be employed to resolve questions which, even if decided in petitioner's favor, would not effect his immediate release.

"* * * the applicant has no right to have adjudicated the validity of a sentence where, if adjudicated in his favor, he would still be confined in the same penitentiary under another existing sentence."

2. 18 U.S.C.A. §§ 4161, 4162.

Oughton v. United States, 9 Cir., 1954, 215 F.2d 578, 579.

Thus, where an inmate is serving two or more sentences concurrently, and concedes the validity of any single one of them, he cannot challenge the validity of any of the others. Williams v. United States, 9 Cir., 236 F.2d 894. If he claims that the sentence is excessive but not void no challenge lies as to the allegedly excess part until the valid part has been served. McDonald v. Johnston, 9 Cir., 149 F.2d 768. And if the inmate has been sentenced to two or more consecutive terms he cannot question the validity of the succeeding sentences if he concedes or it is apparent that the sentence under which he is then incarcerated is valid. McNally v. Hill, supra; Crow v. United States, supra; United States v. Greco, D.C., 141 F.Supp. 829.

The instant case presents the converse of the last stated situation. Here the succeeding term is concededly valid but the existing sentence is questioned. Does the chance difference that appellant was charged, and sentenced on Count I before Count II change the result reached in the McNally and Crow cases? We think not.

Apparently this is a question of first impression. No direct authority on the precise point has been noted. The closest case is McNealy v. Johnston, supra. There the petitioner had been sentenced in Florida on two counts to two consecutive terms of five years each. Subsequently, he was sentenced in Alabama to a term of three years to commence on the expiration of the Florida sentence. After serving five years, less good time allowance, he challenged the validity of the first Florida sentence. This Court held that it could not entertain his petition because regardless of its disposition of his claim he still had at least three more years to serve under the Alabama sentence. Implicit in the opinion is the belief that if petitioner had not completed serving five years, the sentence in Florida under the second count would suffice to bar a review of the sentence under the first count.

The cases fall into a reconcilable pattern. To summarize the rule of law gleaned from the decisions: Wherever an inmate will still be confined under a valid sentence despite any disposition in his favor on other sentences arising out of the same judgment of conviction as the valid sentence, he may not question any of the others until such time as he could lawfully be released under the valid one. He must be "claiming the right to be released,"—the precise language of the statute, § 2255. The detention must be wholly unlawful. If it is not, and a legitimate reason exists for detention, a court is not at liberty to entertain a motion under § 2255.

Here there is a valid ground for continued detention. Accordingly, we hold on this point that appellant's motion was filed prematurely and that the denial thereof by the District Court must be affirmed.

In so ruling we are not unmindful of the recent decision in the Sixth Circuit, Duggins v. United States, 240 F.2d 479, 484.

There the Court, conceding that the relief sought by appellant was not authorized by Title 28 U.S.C.A. § 2255, decided that relief was nevertheless authorized under Rule 35 of the Rules of Criminal Procedure, 18 U.S.C.A. In that regard, the Sixth Circuit said:

"No attack is made upon the validity of the conviction. It is purely a question of correcting the sentence to conform to the statute. Such a sentence is illegal within the meaning of Rule 35. It should be corrected regardless of whether the correction results in the release of the prisoner."

The Court then reads Duggins' petition as though it had been filed under Rule 35 and not under Section 2255, as it actually was. The instant matter is not one involving the mere correction of an illegal sentence. Here is involved the validity of the conviction itself. Ac-

cordingly, we cannot rely on Rule 35 as was done in the Duggins case, and treat the § 2255 petition as one filed under Rule 35.

It is therefore unnecessary under our views hereinabove expressed to determine whether appellant is foreclosed from raising his contentions either because he could have done so by direct appeal, Banghart v. United States, 4 Cir., 208 F.2d 902, 903, or because under the statute he urges as applicable he would still not be eligible for release, De Maurez v. Squier, 9 Cir., 121 F.2d 760, or, (assuming we reach the merits) whether appellant's assertion is tenable that the four checks in controversy do not come within the broad and comprehensive language of "other writing" but instead fall within the restricted class of "pension checks." [3]

■ Lest, however, appellant be misled into thinking that an otherwise meritorious contention is rejected solely because of a procedural defect which may be cured in the near future, we are constrained to observe that appellant's reliance on the Wilson case, supra, is misplaced. The Wilson case does not hold—as appellant seems to believe it does—that "pension checks" are not "other writing(s)." It holds rather that the language "other writing(s)" does not embrace a forged endorsement of a genuine instrument. It is a holding on the capacity in which the forger signs and not on the nature of the instrument signed.

And even on that point, the Wilson case is not now the law. The Supreme Court in Prussian v. United States, 1930, 282 U.S. 675, 51 S.Ct. 223, 75 L.Ed. 610, held that the phrase "or other writing" contained in 18 U.S.C.A. § 73 (now 18 U.S.C.A. § 495) is broad enough to include the forging of an endorsement upon any genuine check drawn by a disbursing agent on the Treasury of the United States. Each check mentioned in the seven counts of appellant's indictment was so drawn and payable.

Mr. Justice Stone, writing for the Supreme Court, came to precisely the opposite interpretation of the statutory phrase as did the Minnesota District Court. Through him, the Supreme Court said (282 U.S. at page 679, 51 S.Ct. at page 225):

"We think the indorsement was a 'writing' within that section. Its language is 'comprehensive' and 'all-embracing.' Cf. United States v. Davis, 231 U.S. 183, 188, 34 S.Ct. 112, 58 L.Ed. 177. The writings enumerated have no common characteristic from which a purpose may be inferred to restrict the statute to any particular class of writings. The addition of 'other writing' to the enumeration was therefore not for the purpose of including writings of a limited class, but rather of extending the penal provisions of the statute to all writings of every class if forged for the purpose of obtaining money from an officer of the United States." (Cases cited.)

Appellant urges in his second point that the District Court committed reversible error "by denying appellant equal protection of the case and due process of law." This rests upon no evidence or record or transcript, but upon appellant's conclusions that he was convicted upon conflicting, "vague and uncertain" testimony, and that the United States' Attorney was allowed to "explore appellant's past" and question him about "admitted past actions," and make "improper comments thereon;" that the United States' Attorney knew that appellant "was being sold far short by his attorney."

The best manner in which to dispose of this contention is simply to say nothing in the record before us indicates that any rights of appellant were taken from him during his trial; nor in any subsequent proceeding in the District Court, but that his rights were respected by the court, by the United States' Attorney,

3. See, e. g., De Maurez v. Squier, 9 Cir., 144 F.2d 564 (Civil Service Retirement Fund check *held* not a pension check);

United States v. De Maurez, D.C., 54 F. Supp. 102 (Works Progress Administration check *held* not a pension check).

and by his own attorney, throughout all proceedings. Appellant's contentions to the contrary are of no merit whatsoever.

The order of the District Court denying appellant's motion to correct sentence is affirmed.