Fred BRIDGES, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15493.

United States Court of Appeals
Ninth Circuit.

April 21, 1958.

Certiorari Denied Oct. 13, 1958.
See 79 S.Ct. 73.

612

Fred Bridges, in pro. per.

Lloyd H. Burke, U. S. Atty., Richard H. Foster, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before DENMAN, BONE and FEE, Circuit Judges.

BONE, Circuit Judge.

Appellant Bridges was named as one of two defendants in a five count indictment (criminal cause No. 33917 in the lower court). The first count in this indictment charged Bridges with a violation of the Harrison Narcotic Act. The second count charged him with a violation of the Jones-Miller Act. These two alleged violations occurred at the same time and as parts of one so-called "transaction" on January 7, 1954.[1]

In the fifth count, Bridges and one Nayland Jackson were accused of conspiring together to violate certain sections of Titles 21 and 26 of the United States Code.[2]

---

[1] The first count reads as follows:
"*First Count:* (Harrison Narcotic Act, 26 U.S.C. 2553 and 2557)
The Grand Jury charges: That
Fred Bridges,
one of the defendants herein, on or about the 7th day of January, 1954, in the City of Oakland, County of Alameda, State of California, within said Division and District, unlawfully did sell, dispense and distribute, not in or from the original stamped package a certain quantity of a narcotic drug, to-wit, approximately 12 grains of heroin."
The second count reads as follows:
"*Second Count:* (Jones-Miller Act, 21 U.S.C. 174)
The Grand Jury further charges: That
Fred Bridges,
one of the defendants herein, at the time and place mentioned in the first count of this indictment, within said Division and District, fraudulently and knowingly did conceal and facilitate the concealment of a certain quantity of a narcotic drug, to-wit, approximately 12 grains of heroin, and the said heroin had been imported into the United States of America contrary to law as the defendant Fred Bridges then and there knew."
Courts are familiar with the fact that lawyers are quite prone to refer to an indictment which charges in different

counts the commission of offenses which separately and simultaneously violate *both* the Harrison Act *and* the Jones-Miller Act, as an indictment charging offenses flowing from, and the product of, *one* so-called "transaction."

[2] The fifth count in the indictment reads as follows:
"*Fifth Count:* (Conspiracy, 18 U.S.C. 371)
The Grand Jury further charges: That
Fred Bridges and
Nayland Jackson,
defendants herein, at a time and place to said Grand Jury unknown, did conspire together to sell, dispense and distribute, not in or from the original stamped packages, quantities of a narcotic drug, to-wit, heroin, in violation of Sections 2553 and 2557 of Title 26 United States Code, and to conceal and facilitate the concealment and transportation of quantities of a narcotic drug, to-wit, heroin, which heroin had been imported into the United States of America contrary to law as the defendants, and each of them, then and there well knew, in violation of Section 174 of Title 21 United States Code; that thereafter and during the existence of *said* conspiracy one or more of the defendants hereinafter mentioned by name, at the time and place hereinafter set forth, did the following acts in fur-

In the third and fourth counts of the indictment, Jackson was accused of violating certain provisions of the Harrison Narcotic Act and the Jones-Miller Act.

On May 26, 1954, Criminal Cause No. *33917* came on regularly for trial before Judge Harris of the lower court at which time counsel for Bridges stated in open court (with Bridges present) that so far as indictment number 33917 was concerned, he desired to withdraw Bridges' plea of "not guilty" theretofore entered, this to permit Bridges to present "a new and different plea as to the first two counts" of this indictment. Counsel for the United States stated that his client had no objection to the court accepting a new plea from Bridges. Following this statement the court formally announced that it would accept such a new plea from Bridges *on the first two counts*. (As we shall later note, Bridges was, at this time, also named as a defendant in another indictment.)

Immediately after this exchange in open court a colloquy ensued which underlies and gives character to much of Bridges' arguments on this appeal. We set forth in the margin the pertinent parts of this colloquy between the court, counsel and Bridges.[3]

Thereafter and on June 16, 1954, Bridges was brought before the lower court for sentence. At that time his counsel sought to defer imposition of sentence, stating that a controversy had arisen as to whether Bridges was an "addict." The court then commented on the report of a Mr. Gentry, the District Supervisor, in which Gentry described the long "criminal record" of Bridges as it appeared in the files of the F.B.I. The court referred to the fact that this record stated, among other matters, that until his arrest, Bridges "was a persistent violator of the narcotic laws and one of the major distributors of heroin in the Oakland, California area."

therance thereof and to effect the objects of the conspiracy aforesaid:

*Overt Acts*

1. On January 7, 1954 the defendant Fred Bridges had a conversation with Margie Gray in the vicinity of 7th and Wood Street, Oakland, California.

2. On January 7, 1954 the defendant Nayland Jackson handed a package to Margie Gray in the vicinity of 8th and Adeline Streets, Oakland, California."

3. "The Clerk: In case 33817, Fred Bridges, do you withdraw your former plea of not guilty to counts one, two and three of this indictment? (3–a)

"Defendant Bridges: Yes.

"The Court: The plea is 'yes', guilty?

"Mr. Sullivan (counsel for Bridges) As to his—

"The Clerk: Withdrawal. What is your plea, Fred Bridges, *to count one and two of this indictment*, guilty or not guilty?

"Defendant Bridges: *Guilty.*

"Mr. Sullivan: Same transaction. (3–b)

"The Court: *The other counts may be dismissed.* You have had the advice of your attorney, Mr. Sullivan, in this matter, have you?

"Mr. Sullivan: Yes, your Honor. Talked to him.

"Defendant Bridges: Yes, Judge, your Honor, I understand I am pleading to one count.

"Mr. Sullivan: One transaction. Well, it is one transaction Mr. Bridges. *It is simply as I told you before, two different statutes, that's all.* (3–b)

"The Court: *There isn't any question in his mind?*

"Mr. Sullivan: *No, not at all, your Honor.*"

(The emphasis is ours.)

From the foregoing, it is clear that if Bridges actually thought that he was pleading guilty to only *one count*, he failed to tell the court upon *which one of the two counts* his plea of guilty was entered.

Note 3–a. It is obvious from the record that the figures *33817* here appearing in the typed transcript are a typing error since the proceeding in court was in case *33917*. Another and separate indictment under another number was apparently pending in which indictment Bridges was also named as a defendant. This indictment was dismissed by the Court.

Note 3–b. This was obviously a reference by counsel to the fact that counts *one* and *two* of the indictment in Criminal No. 33917 charged offenses which while coming within the terms of *both* the Harrison Act and the Jones-Miller Act, were part of the "transaction of January 7, 1954 referred to in these two counts in No. *33917.*

The court then stated to Bridges that he had "heretofore entered a plea of guilty *to the first and second counts of a five count indictment,*" (No. 33917) and asked Bridges if he was "ready for sentence." To this question, Bridges answered "yes." The court then proceeded to impose a sentence of 5 years in a Federal penitentiary under count one, and a fine of $500. With respect to the second count, the court imposed a sentence of five years in a Federal penitentiary and a fine of $500. The court further announced that the five year sentence under the second count was "to run consecutively and not concurrently, that is, after the expiration of it (the first count). The total. fine will be $500." (Emphasis is ours.)

Thereafter, and following a colloquy concerning the entirely different indictment we have mentioned and in which Bridges and Jackson had been named as defendants, the court announced that this particular and other indictment was dismissed by consent of government counsel. The record indicates that on this occasion (June 16, 1954) when these two consecutive sentences totalling 10 years were imposed, neither Bridges nor his retained counsel made any sort of statement to the court protesting or questioning the imposition of such consecutive sentences, and no appeal was taken therefrom.

Subsequent Proceedings

On March 14, *1955*, the lower court caused to be entered a "Corrected Judgment" in Criminal Cause No. *33917.* This judgment formally recited that Bridges "had been heretofore convicted upon his plea of guilty" *under Counts 1 and 2 of the indictment in this cause.* In this "corrected judgment" the court adjudged that Bridges be committed to the custody of the Attorney General, etc. for imprisonment for a period of five years under Count One of the indictment, and pay a fine of $500; and imprisonment for a period of five years under Count Two of the indictment. The judgment also recited that the court therein "corrected its judgment of June 16, 1954"; that the

imprisonment imposed on Count Two run from and after the *expiration* of the term of imprisonment imposed on Count One of the indictment; that the "total imprisonment" was to be 10 years; that the *fines* imposed on Counts 1 and 2 "run concurrently." The court also recommended commitment to a Federal penitentiary. No appeal was taken from the entry of this "corrected judgment," and the case went coasting along in this posture.

Later, and on May 17, 1955, Bridges made the first affirmative move in this case. In this move, and by motion, he assailed the above noted "Corrected Judgment." On that date he filed a motion (under Section 2255 of Title 28 U.S. C.A.) to vacate this particular judgment. On June 15, 1955, District Judge Harris ordered that this motion be denied. Bridges *did not appeal from this order.*

On January 14, *1957*, almost three years after he was first sentenced, the motion now before us (also under Section 2255) was filed.

On January 30, *1957*, the case came on regularly before District Judge Harris for hearing on Bridges' latest and second motion. Bridges was not present, and his counsel (who had been notified of the date of the hearing) was not present. The court ordered the hearing continued until February 13, 1957, and directed in the order that counsel for Bridges be so notified, and supplied with copies of the transcript of record of proceedings had on January 30, 1957.

On February 13, 1957, the said motion again came on regularly for hearing before Judge Harris pursuant to the order just above noted. Bridges was not present (he being in prison) but his counsel, who at all times here pertinent had represented him in the cause, was present. After hearing from counsel for both sides the court ordered that this second motion of Bridges under Section 2255 to vacate and set aside that portion of the sentence imposed on Count 2 of the indictment (No. 33917) be denied. The in-

stant appeal is from this order which bears date of February 13, 1957.[4]

4. At the hearing held on February 13, 1957, a colloquy ensued in open court which sheds additional light on the issue here presented. Pertinent parts of that colloquy are here set forth. The Mr. Sullivan here mentioned was, at all times here pertinent, counsel for appellant. (Emphasis is supplied.)

"The Court: Mr. Sullivan, in order that you may understand the events which occurred during your absence, or at least while you were not in court, I felt and I presently feel that when Mr. Bridges came before me—There were successive continuances, as I recall.

"Mr. Sullivan: That's right.

"The Court: And when you represented him, he was fully advised concerning his rights. I knew that in your representation he was receiving, certainly, adequate representation; and when his pleas were entered *to the several counts*, I then felt and now reiterate that, at least so far as I was concerned, the man knew the nature of the plea or pleas, the consequences and the ultimate outcome.

"Mr. Sullivan: In the first place, Bridges was the one who made the decision that he wanted to plead, if a plea was to be entered. At that time I was aware of the fact that this indictment to which he pleaded—and it has just been directed to my attention there was another indictment, also. The other defendant, Jackson, was in the hospital.

"The Court: That is right. He had a very severe stomach ailment.

"Mr. Sullivan: We put it over in the hope that he would ultimately appear. But at that time I was aware of the fact that the United States Attorney was only accepting plea *to both counts*, and before Bridges ever pleaded, I told Bridges he was pleading guilty to a single transaction, that is, involving the same narcotics. That is, the *sale*, and so forth. The second count, the legal count was that of *possession* of the same narcotics. But at no time was he made to believe it was a single count. The word 'transaction' was used, I admit, because in the first count he *sold and delivered* a certain narcotics and in the second [count] he *possessed* it. I can see what he is driving at. But I assure you on the way over here I explained to Bridges *two counts were involved* even though they resented a single transaction. I don't believe he misunderstood, but, of course, —I might say, I am satisfied whoever

On the instant appeal, appellant (who prepared his own brief) failed to comply

drew this [Section 2255] petition is maybe a better lawyer than I am.

"Mr. Foster: (Government Counsel) I would only like to state for the record that the indictment that was dismissed, that is No. 33918, in which Mr. Bridges was charged with one Joseph W. Jackson, contained *seven counts* in which Mr. Bridges was named in each count of the indictment. In addition to that, there was another count in the indictment to which he [Bridges] pled. There were three counts in which he was named in that indictment, so there were actually *eight counts* of the indictment dismissed by Your Honor after the plea of guilty.

"The Court: I dismissed the conspiracy count in Indictment No. ........

"Mr. Sullivan: (Interposing) 33917.

"The Court: I dismissed the companion indictment, isn't that right?

"Mr. Foster: That is correct. So if you add the amount of sentence that could have been given *on the eight counts*, and the maximum sentence at that time was five years, the defendant could have gotten a total of 50 years.

"The Court: I was impressed at the time of sentence by the report submitted by Mr. John Sprague:

" 'The defendant's most recent arrest wherein he continued to traffic heavily in narcotics while on bond following a previous narcotics arrest aggravates an already gravely serious situation. There exists a lengthy prior criminal record, a poor employment record, and the trafficked quantities of heroin were large. A detention period other than minimal seems appropriate.'

I therefore, in the light of what appeared reasonable and just, imposed *a sentence of five years on each count*, the sentences to run consecutively.

"Mr. Sullivan: Your Honor, at the time I felt that Bridges was not a stupid colored man, in any event, and I am satisfied that Bridges would be the type of man who would be bound to know what was going on around him, and I felt at the time we certainly weren't taking the worst when we got rid of as many counts [eight] as we did. Your Honor knows as well as I do the juries at that time were convicting these men right along.

"The Court: And you know I have been rather severe in some of these cases.

"Mr. Sullivan: And you always stated, and I know it was in his [Bridges] pres-

with our Court Rule 18(d), 28 U.S.C. in that his brief does not set forth a formal specification of errors upon which he relies. However, from arguments in his brief, he appears to rely in the main upon the claim that his attorney had advised him that the Government would accept a plea of guilty *on one count,* and he argues that *this* was the sort of plea he entered on May 26, 1954. He relies on the transcript of record (apparently what is set out in footnote 3) to substantiate this claim. So far as we are able to determine from his brief, the claimed error or errors on which he relies (and which, for the purpose of this appeal, we accept as his specification of errors) appear to be fairly and adequately presented in his so-called "summary" which we note in the margin.[5]

Our examination of the record leads us to agree with appellee that the controlling questions presented for decision may be stated as follows:

"1. Was the Court required to entertain a second motion for relief under Section 2255?

"2. May there be consecutive sentences for the concealment of heroin and the sale of that heroin when the first sentence is imposed under the Jones-Miller Act and the second sentence is imposed under the Harrison Narcotics Act?

"3. Was appellant deprived of due process of law in his plea of guilty and his sentence thereupon?"

As to the "errors" here relied on, appellant contends that the lower court was without jurisdiction to impose the second and *consecutive* sentence on Count Two; that "as a matter of law the sentence under Count Two should have been made to run concurrently with the sentence imposed under Count One." This argument makes clear that appellant is not challenging the *jurisdiction* of the court *to impose the two sentences so long as they were ordered to run concurrently* thereby imposing but *one punishment* under both charges. This view rests on the specific contention that "in order that separate offenses charged in an indictment may carry different punishments, they must rest on separate and distinct criminal acts and therefore, if they were committed at the same time and were part of the same criminal continuous act and inspired by the same criminal intent which is an essential element of each offense, they are susceptible to but one single punishment."

Based on the foregoing argument, appellant asserts that imposition of the second (consecutive) sentence has caused him to suffer double punishment *because of an inference* that the heroin referred to in the first count was also *involved* in the second count. From this fact he argues that since *proof* of the commission of the offense charged in Count One *involved use* of the same *evidence* relied upon to sustain the offense charged in Count Two, the claimed *use*

---

ence, you were going to give a considerable sentence.

"The Court: I feel that the man was fully advised, and I desired your presence here so that hereafter, if the matter is reviewed, *I should like the record to reflect the fact* that not only was he represented during the course of the criminal proceedings heretofore, but even now, by competent and adequate counsel. The motion is accordingly denied."

5. "This case may be briefly summarized by stating that the appellant upon the advice by counsel and to the appellant's best judgment did change the plea from not guilty to a plea of guilty with the understanding that the plea was being

made to one count. It was then thought by the appellant that since it was the appellant's first offense, it was a possibility of the court imposing a minimum sentence of two years. However, the court accepted a plea of guilty and then imposed a maximum five year penalty under count one of the indictment, and further aggravated the matter by exceeding its statutory jurisdiction and imposed a second five year sentence to run consecutive to the first five year sentence imposed. The court was without jurisdiction to impose the second sentence, when said sentence was ordered to run consecutive to the first sentence. The appellant will in this brief conclusively show and prove this point."

of this evidence shows that he had committed but one offense and therefore was subject to only one penalty. This is a far from uncommon contention, and appellant cites two early cases as authority to sustain it, Munson v. McClaughry, 8 Cir., 1912, 198 F. 72, 42 L.R.A.,N.S., 302, and Stevens v. McClaughry, 8 Cir., 1913, 207 F. 18, 51 L.R.A.,N.S., 390.

The above noted argument advanced by appellant is utterly void of merit. When he waived trial on the merits by entering a plea of guilty on both counts, he thereby deliberately (and as a matter of law) relieved the Government of the necessity of introducing *proof of any sort* to fully sustain the specific allegations set forth in each of the first two counts of the instant indictment. His plea of guilty constituted an admission of guilt and in itself furnished all necessary "proof," and we so hold. As a matter of law his plea of guilty on the two counts here involved was, in itself, a conviction under each of these counts. See Berg v. United States, 9 Cir., 176 F.2d 122, certiorari denied 338 U.S. 876, 70 S.Ct. 137, 94 L.Ed. 537. And it should be added that there is not a scintilla of evidence in the record which would support even a slight inference that appellant's plea might have been induced or procured by trick, artifice or coercion. The cases are too numerous to justify burdening this opinion with citations which also point up the fact that different counts in an indictment which separately charge violations of the Harrison Act and the Jones-Miller Act, may subject a defendant to punishment for violations of *both Acts.*

Furthermore, if appellant had elected to go to trial and put the Government on its proof, he would then have faced the *proof* he talks about in connection with an "inference." He may not now rely on *an inference or inferences* which *might* or *could* have arisen from *proof* produced at trial since appellant had eliminated the necessity for a trial, and this fact was obvious to him. And it should be pointed out that at no stage of the proceedings here pertinent has appellant claimed that the allegations here in question failed in

any regard to charge the crimes averred in each of these two counts. His only complaint is that imposition of the consecutive sentences under his plea on these two counts was beyond the jurisdiction of the court. We disagree with this contention.

■ It is also our view that the two counts in the indictment sufficiently charged the commission of two separate offenses, each being made punishable by Congress under the different acts here involved. The trial judge was well aware of this fact and of the long exercised power and purpose of Congress to provide legislative aid in suppressing the narcotics traffic by ordaining that separate sentences might be imposed for separate offenses named in the separate Acts here involved, even though such violations may have arisen out of what is frequently referred to as one incident or "transaction." We do not doubt that the sentences here imposed were lawful.

Under the circumstances of this case, the question whether consecutive sentences should be imposed was a matter wholly within the competence and discretion of the lower court. Appellant is here challenging that authority.

■ From all that transpired in this case, it is obvious that Judge Harris was not at all impressed or persuaded by counsel's interjected comment about "one transaction" or appellant's comment about "one count." Nor do we doubt that appellant was well aware that he was voluntarily pleading guilty on the first two counts. His arguments on this appeal become an exercise in semantics and fail to obscure or discount the significance of the colloquy at the time of the imposition of the sentences. The record makes clear that at no time has Judge Harris entertained doubt as to appellant's full understanding of the exact nature and legal scope of his plea on these two counts. The orders of the court in this case so indicate.

Bridges was not a frightened juvenile overwhelmed and bewildered by the solemnity of a court proceeding. He was a

grown man with an unsavory criminal record which he did not challenge when discussed in court. He stood in court accompanied by capable counsel of his choice when he entered his formal plea, and neither of these men voiced objection to the imposition of the separate and consecutive sentences at the time they were announced from the bench, nor did they later object when the "corrected judgment" was entered.[6]

On the whole record we must and do conclude that the order of the lower court was just and proper and should be affirmed. It is so ordered.

JAMES ALGER FEE, Circuit Judge (concurring).

At the outset of every proceeding, this Court is bound to consider its own jurisdiction and the jurisdiction of the lower court. Once it appeared from the record that a claim could be made that Bridges did not completely understand to what indictment or to what counts he pleaded guilty, the trial court had jurisdiction of the sentences on both counts. It was mandatory that the question be determined. Complete lack of understanding could have been found if the record and the recollection of the judge justified the finding. On the other hand, the trial judge could have found and did find here that that court did "not accept the plea without first determining that the plea" was "made voluntarily with understanding of the nature of the charge." Rule 11, Federal Rules of Criminal Procedure, 18 U.S.C.A. The form of the motion, what Bridges prayed for, admitted or conceded, and the verbiage of the order of denial are immaterial.

The principle laid down in Crow v. United States, 9 Cir., 186 F.2d 704, and like cases arising under § 2255, is hornbook law.[1] The series of cases above noted has, however, nothing to do with the situation here. The contention that the motion must be dismissed is not made by Bridges, but appears only in the dissent. The gravamen of the motion itself is based entirely upon irregularities or omissions in the transcript, which it is claimed shows on its face that Bridges utterly failed to comprehend the actual situation when he entered his pleas. It is contended the transcript shows Bridges did not know to what crime or to what charges he pleaded guilty. If Bridges pleaded guilty without understanding, the court would have had no jurisdiction to impose any sentence, and the present motion could be considered a petition for coram nobis.[2] The same jurisdictional

6. The significance of what occurred when the consecutive sentences were imposed is not to be overlooked. Appellant's plea of guilty was entered at a time when (as indicated by the record) he was materially benefiting himself by securing the dismissal, not only of another count in the instant indictment, but also the dismissal of another and separate indictment in which he was named as a defendant.

It is of more than passing interest that nearly three years elapsed in the lower court before appellant got around to urging that the court lacked jurisdiction to impose the second, and consecutive, sentence. From aught the record shows he was quite content during this interim to enter upon service of these sentences without a protest to the court from him and his counsel. Doubtless the fact that he thus escaped the hazards of a trial on another indictment by his plea in cause 33917, played an important part in his delay in telling the court that it "misunderstood" the "nature" of his

plea in 33917. Courts have emphasized the fact that the moving party on a motion under Section 2255 undertakes a heavy burden to overcome the regularity of the conviction, and this is especially true when the attack comes after a long delay.

1. Further citation of authority is, of course, unnecessary.

2. Shelton v. United States, 5 Cir., 246 F. 2d 571. Prior proceedings in the Shelton case are reported in 242 F.2d 101. United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 254, 98 L.Ed. 248, recognized the validity of motions "in the nature of a writ of error coram nobis" in federal criminal practice. Earlier the Supreme Court had described the correctional jurisdiction of District Courts on coram nobis as "the power of the court * * * to vacate its judgments for errors of fact * * * in those cases where the *errors were of the most funda-*

defect to impose any sentence relates to the whole transaction and may be dealt with under § 2255.[3]

The main opinion deals with two phases of the misunderstanding alleged to be shown by the cold transcript alone. The first phase is that Bridges did not know whether he pleaded guilty to Indictment 33,917 or Indictment 33,817. The second phase is that Bridges did not understand that he pleaded guilty to two counts of either indictment, but understood he was pleading only to one count.

If there was any misunderstanding upon either phase on the part of Bridges in entering the plea, the whole transaction should be set aside and defendant remanded to plead again. We accept the mandate of Rule 11, Federal Rules of Criminal Procedure, completely.

The highly technical suggestion that Bridges prays only for relief as to the consecutive sentence, apparently in the belief that he has fulfilled the sentence on one count, should be dismissed without consideration.

Certainly, the sound principle first above set out should not be distorted to prevent an attack on a sentence by a prisoner who by accident or design, without understanding upon his part, has been sentenced upon two counts instead of one, as he has been led to believe. Bridges makes that exact claim here. It would be unjust for the District Court to deny consideration simply because he failed to ask for cancellation of the sentence on Count One, which he apparently thinks

had expired.[4] If he were without understanding of the transaction, he would not know whether he pleaded guilty to Count One or to Count Two. If the trial court had power to hear the claim of Bridges, it necessarily had the power to determine whether both of the sentences were valid or whether both were void. Both must stand or fall together.

The claim that Bridges never has pleaded to any count of Indictment 33,-917, upon which both sentences were imposed, is based upon the transcript alone. If Bridges pleaded guilty to Indictment 33,817 and not to Indictment 33,917, no sentence was valid. If Bridges, through lack of understanding, pleaded guilty to only one count of Indictment 33,917, instead of the two upon which he was adjudged guilty, the entire transaction and both sentences are void. The alleged lack of understanding upon the part of Bridges, which, if it existed, would avoid the sentence on Count Two, would necessarily avoid the sentence on Count One. No court would hold the contrary. If either of these situations appeared in the proceeding before the lower court, by the allegations of the motion that tribunal would be bound to pass thereon, whether or not Bridges raised them. Since both claims were inherent in the proceeding under § 2255, the lower court had jurisdiction to consider the validity of both sentences.

Jurisdiction is the power to hear and to determine. It is clear the trial court had presented to it the validity of the total sentence on both counts.[5] Since juris-

---

3. Compare United States v. Brown, 7 Cir., 207 F.2d 310; Mathis v. United States, 6 Cir., 200 F.2d 697; Lopez v. United States, 9 Cir., 186 F.2d 707. In the Lopez case, appellant was in custody under a "separate, distinct and unrelated sentence."

4. If the sentence on Count One has expired, of course, the question as to it would be moot.

5. The fact that Bridges sought release in a previous proceeding on the ground that he was placed in double jeopardy, which was denied by the District Court,

---

*mental character;* that is, such as rendered the proceeding itself irregular and invalid." (Emphasis added.) United States v. Mayer, 235 U.S. 55, 69, 35 S.Ct. 16, 19, 59 L.Ed. 129. This Court has also said: "It would seem reasonable that the court rendering the *void judgment could set it aside at any time on direct application* for such an order * * *. Such an application by motion to the trial court is in the nature of an application for a writ of error coram nobis." (Emphasis added.) Robinson v. Johnston, 9 Cir., 118 F.2d 998, 1000.

diction was present, a refusal to determine the matter upon technical grounds would be improper. Bridges, who is seeking a determination, would find such a refusal peculiarly mystifying. This Court should not frustrate Bridges by the futile requirement that he file the identical petition tomorrow in order to receive the answer we can give him today.

The trial court had power to consider the validity of the total sentences. Our jurisdiction is likewise thus comprehensive. It is our duty to review the denial.

The learned judge who presided over the arraignment and who pronounced sentence in the exercise of this jurisdiction, heard the matter and determined Bridges thoroughly understood. It is true, since the judge was present himself, he reconstructed the proceeding from his recollection as refreshed by the transcript. This was the very purpose behind the enactment of § 2255. This Court cannot assume that he was thus attempting, with the aid of a reputable attorney who was also present, to justify himself or to railroad a victim.

By rationalization, it is possible to warp the cold record in a grotesque way. However, if the situation be viewed judicially, it is clear that Bridges understood he was pleading to Indictment 33,-917, which had five counts and which named Bridges as a defendant, rather than to Indictment 33,817, which had two counts and which did not name Bridges at all. Sentence had been passed on one Barbara Mae Martinelli upon Indictment 33,817 on November 24, 1953. It was not even pending before the court when Bridges was arraigned on May 26, 1954.

The record shows at the time Mr. Sullivan, counsel for Bridges, initiated the action, as follows:

"Mr. Sullivan. As far as this particular indictment is concerned, I desire to withdraw the plea of not guilty heretofore entered for the purpose of presenting a new and different plea as to the first two counts.

"The Court. The Court will accept the plea, there being no objection on your part?

"Mr. Foster [Assistant United States Attorney]. No objection.

"The Clerk. In case 33817, Fred Bridges, do you withdraw your former plea of not guilty to counts one, two and three of this indictment?

"Defendant Bridges. Yes."

Furthermore, not only were the arraignment, plea and sentence on two counts of Indictment 33,917 one transaction, but other circumstances were indivisibly woven into the whole. The colloquy regarding the plea did not stand alone. A month later, with defendant and his counsel present, the same judge, prior to sentencing, inquired directly of defendant: "Are you ready for sentence?" Defendant answered: "Yes, Your Honor." Bridges was then sentenced to five years on the first count charging a violation of the Harrison Narcotics Act in that Bridges sold heroin, and to a term of five years on the second count of the indictment charging the concealment of the heroin referred to in the first indictment, and the terms of imprisonment were ordered to run consecutively.

Neither defendant nor counsel made any comment or interposed any objection. The United States Attorney thereupon dismissed the remaining counts against Bridges of Indictment 33,917 and dismissed as to Bridges a separate Indictment 33,918, charging violations of 26 U.S.C. §§ 2553, 3557, 21 U.S.C. § 174 and 18 U.S.C. § 371. There is no claim by defendant that the action in these dismissals was due to any understanding. But this action was also part of the same transaction.

Beyond this, it is crystal clear that, since the dismissal pertained to the remaining counts of Indictment 33,917, the

---

indicates that the attack was on the total sentence. His present motion, founded on the idea that the sentence on one count or the other has expired, seems to be an attempt to avoid the argument that a previous motion upon similar grounds has already been denied.

plea related to Counts One and Two of that indictment. The contention that this Court should rely upon a part of a cold record without attempt to recreate the situation in the courtroom is thus met by a logical view of the situation shown thereby as a whole.

However, the cold record, even with its apparent inaccuracies and failure to reflect the atmosphere of the courtroom and the attitude of the persons present, conclusively demonstrates that Bridges acted not only with complete understanding but with sagacity and cunning.

Bridges delayed his present attack upon the unified proceeding until he could not lose if the sentences on both counts were set aside. As a realist, he did not appeal at the time, and he did not claim lack of understanding for almost three years. He thus assured himself that the statute of limitations would run before he could be reindicted on the charges which had been dismissed. Whether this course of action was dictated by his native ability or legal advice, the result is the same. Which was to have been demonstrated. There is no gain in making a fetish out of the language of Rule 11. The cases in which it was properly applied to avoid pleas will not be discussed. Here the review of occurrences proves Bridges did not misunderstand, but that he understood only too well.

The denial of the motion was correct.

DENMAN, Circuit Judge (dissenting on several jurisdictional grounds and on the merits if jurisdiction exists).

A. *The District Court lacked jurisdiction to proceed to sentence Bridges because he was never arraigned on and did not plead guilty to the indictment returned by the grand jury.*

Though Bridges nowhere raises the contention, we are required to entertain it as if in a writ of error coram nobis, the absence of a plea of guilty being an error "of the most fundamental character; that is, such as rendered the proceeding irregular and invalid." United States v. Mayer, 235 U.S. 55, 69, 35 S.Ct. 16, 19, 59 L.Ed. 129; and see United

States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248.

The number of Bridges' indictment in the District Court was 33,917. He never pleaded guilty to that indictment, the transcript record showing that on arraignment before the District Court he pleaded guilty to an entirely different indictment, No. 33,817. The colloquy is shown by the reporter's typed transcript to which he certifies "that the foregoing transcript * * * is a true and correct transcript of the matter therein contained." It is as follows:

"The Clerk: In *case 33817*, Fred Bridges, do you withdraw your former plea of not guilty to counts one, two and three of this indictment?

"Defendant Bridges: Yes.

"The Court: The plea is 'yes', guilty?

"Mr. Sullivan: As to his—

"The Clerk: Withdrawal. What is your plea, Fred Bridges, to counts one and two of *this* indictment, guilty or not guilty?

"Defendant Bridges: Guilty." [Emphasis added.]

This court assumes that this is a typing error of the reporters in transcribing the reporter's notes and hence despite the certificate to the contrary, *we must assume that the clerk's question in fact was:*

"In case *33,917*, Fred Bridges, do you withdraw * * *

"What is your plea, Fred Bridges, on counts one and two of *this* indictment, guilty or not guilty?" [Emphasis added.]

Since the burden of proof is on the government we are obliged to assume the exact contrary, i.e., that what the certified typed record shows is the truth and that Bridges' pleading of guilty is not to Indictment 33,917 but to another indictment with which he is not concerned.

The fact that the question concerning indictment 33,817 was put by the clerk does not make it a clerical mistake. It

would be as ineffective when asked by the judge as when asked by the clerk. There well may have been a clerical error by the stenographer when he typed the testimony but that cannot be assumed. It is up to the government to prove that the stenographer's certificate is untrue by motion in the District Court under F.R. Criminal P. 36. Lohman v. United States, 6 Cir., 237 F.2d 645, 647. Nowhere has it done so.

The fact that the parties later treated the plea of guilty as valid does not create jurisdiction to sentence Bridges where the certified record shows he has not pleaded guilty to the crime for which he is purported to be sentenced.

B. *The District Court, in a § 2255 proceeding, has no jurisdiction to consider the validity of a second five-year sentence where, as here, the moving party admits he is legally confined under a previous five-year sentence and does not seek release from custody.*

Bridges' two sentences were for violations of two different statutes, the sentence on Count One being for violation of the Harrison Narcotics Act (26 U.S.C. §§ 2553, 2557) and that on Count Two for the violation of the Jones-Miller Act (21 U.S.C. § 174). Each requires the proof of facts different from the other.

What is here in question is the jurisdiction of the District Court in a § 2255 proceeding when on February 13, 1957 it denied Bridges' motion "to vacate and set aside or run *concurrent* the illegal portion of the sentence imposed *under count two* of the indictment" in the following language:

"It is ordered that said motion to vacate and set aside that portion of the *sentence imposed on count 2* of the Indictment be, and the same is hereby denied." [Emphasis supplied.]

Not only is it not contended that Bridges' then custody under the sentence on count one is invalid, but on the contrary its validity is admitted by Bridges and he contends that the sentence on count 2 should *run concurrent* with that on count 1.[1]

It is hence obvious that the District Court had no jurisdiction in a § 2255 proceeding to consider the validity of the successive sentence on the second count.

Nothing could be clearer than the law of this circuit which is that the District Court has no jurisdiction in a § 2255 proceeding to determine anything other than a prisoner's claim for the *immediate release from custody,* which that section requires in its provision that only

"A prisoner in custody * * * claiming the right to be released * * * may move the court which imposed the sentence to vacate, set aside or correct the sentence."

The first of our decisions on the limited jurisdiction of the act is Crow v. United States, 9 Cir., 186 F.2d 704 in which, as here, the validity of a *second consecutive sentence was sought to be determined* by one confined on the first of the consecutive sentences. In an able opinion written by Judge Lemmon we stated, at page 706:

"Since the motion under Section 2255 was designed to provide a direct attack in place of collateral attack under habeas corpus, it is logical to conclude that the intent of Congress was to limit the scope of relief under it to that on habeas corpus. Relief under habeas corpus is limited to release from present detention. It is not available to test the legality of threatened detention. It does not lie to secure a judicial decision which, even if determined in the prisoner's favor, would not result in his immediate release [McNealy v. Johnston, 9 Cir., 100 F.2d 280]."

This was followed by Lopez v. United States, 9 Cir., 186 F.2d 707; Oughton v. United States, 9 Cir., 215 F.2d 578, certiorari denied 352 U.S. 975, 77 S.Ct. 373, 1 L.Ed.2d 328; Williams v. United States, 9 Cir., 236 F.2d 894, 897; Hoffman v.

---

1. Nowhere in his briefs here does he contend he should be released from custody.

United States, 9 Cir., 244 F.2d 378, and Toliver v. United States, 9 Cir., 249 F.2d 804. Yet none of our many decisions is mentioned or considered in the majority opinion.

As to Judge Fee's statement that Bridges did not understand to what counts he pleaded and hence the merits can be considered as to both counts in this § 2255 proceeding, it is contrary to the record.

Bridges' motion clearly admits his violation of the first count. It would be a hyper-absurdity to say that one convicted of a crime cannot plead that he is guilty of it or that the court to which he makes such a plea cannot make it the basis of its opinion.

Though the question of jurisdiction protrudes like the sore thumb of conventional speech, the concurring opinion accounts for the court's opinion's failure to consider the decisions respecting it by the following extraordinary reasoning:

> "The contention that the motion must be dismissed is not made by Bridges, but appears only in the dissent."

That is to say, jurisdiction exists until Bridges, who is invoking it, moves to dismiss because it does not exist. This being the law, how absurd the contention of the Supreme Court of the United States in Chicago, B. & Q. R. Co. v. Willard, 220 U.S. 413, at page 419, 31 S.Ct. 460, at page 462, 55 L.Ed. 521, that although the question of jurisdiction has not been raised by the parties "[I]t is firmly established by many decisions that *in every case pending in an appellate Federal court* of the United States, *the inquiry must always be* whether, under the Constitution and laws of the United States, *that court or the court of original jurisdiction could take cognizance of the case.* The leading authority on the subject is Mansfield, C. & L. M. Railway Co. v. Swan, 111 U.S. 379, 382, 4 S.Ct. 510, 28. L.Ed. 462, where the cases are fully reviewed." [Emphasis supplied.]

A further completely unwarranted statement of the concurring opinion to explain Bridges' instant second § 2255 proceeding is:

> "His present motion, *founded on the idea* that the sentence on one count or the other has expired, seems to be an attempt to avoid the argument that a previous motion upon similar grounds has already been denied." [Emphasis supplied.]

The judgment on the two counts was entered on March 15, 1955. Bridges' present § 2255 motion was filed but a year and ten months later on January 14, 1957. Assuming that he had earned *all* his possible good time *allowances* on either five-year sentence, that is (a) of eight days per month of good conduct time under 18 U.S.C. § 4161 for the 22 months prior to the filing of the motion and (b) the three days per month of industrial good time for the first year under 18 U.S.C. § 4162 and also under § 4162(c) five days per month for the next 10 months of the succeeding year until he filed the motion, the total of 176 days plus the 36 days plus the 50 days is but 262 days. Adding these 262 days, or less than nine months, to the 22 months served makes a total of less than 31 months credited to him against the 60 months of the sentence. With the keen intelligence credited to Bridges by the court's opinion it is absurd to contend that Bridges could have founded his motion "on the idea that the sentence on one count or the other had expired."

At the summit of all the absurdities in this § 2255 proceeding the majority agrees with Bridges that he is now confined by the first sentence which is valid and then assumes the jurisdiction to consider whether the second sentence is valid.

*C. There are no further facts creating jurisdiction to consider the motion as a coram nobis proceeding under United States v. Morgan, 346 U.S. 502, 507, 512, 74 S.Ct. 247, 98 L.Ed. 248, where the setting aside of one conviction would have caused a lighter sentence on a subsequent conviction. Here Bridges was proved to have two prior convictions, one for assault to commit murder with a three-year*

*sentence and another for burglary with a one-year sentence.*

D. *Assuming jurisdiction to exist, the opinion of the Court clearly violates the mandatory Rule 11 of the F.R. Criminal P., providing in part:*

"A defendant may plead not guilty, guilty or, with the consent of the court, nolo contendere. The court may refuse to accept a plea of guilty, and *shall* not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge. * * *" [Emphasis added.]

Instead of Bridges pleading guilty "with an understanding of the nature of the charge" it "fairly appears" that the plea "was made under same misstatement or misapprehension" from the quoted matter in this Court's footnote 3, supra, as follows:

"The Clerk: In case 33817, Fred Bridges, do you withdraw your former plea of not guilty to counts one, two and three of this indictment?

"Defendant Bridges: 'Yes.'

"The Court: The plea is 'yes', guilty?

"Mr. Sullivan: 'As to his'—

"The Clerk: 'Withdrawal. What is your plea, Fred Bridges, to counts one and two of this indictment, guilty or not guilty'?

"Defendant Bridges: 'Guilty.'

"Mr. Sullivan: 'Same transaction.'

"The Court: 'The other counts may be dismissed. You have had the advice of your attorney, Mr. Sullivan, in this matter, have you?'

"Mr. Sullivan: 'Yes, your Honor. Talked to him.'

"*Defendant Bridges: 'Yes, Judge, your Honor, I understand I am pleading to one count.'*

"Mr. Sullivan: 'One transaction. Well, it is one transaction, Mr. Bridges. It is simply as I told you before, two different statutes, that's all.'

"The Court: 'There isn't any question in *his* mind'?

"Mr. Sullivan: 'No, not at all, your Honor.'" [Emphasis added.]

It is obvious that the judge regarded the negro as not a person with a clear, understanding mind because after his first statement that he pleaded guilty to the first and second counts the Court asked Bridges, "You have had the advice of your attorney, Mr. Sullivan, in this matter, have you?" Bridges' reply, "Yes, Judge, Your Honor, I understand *I am pleading to one count*" could only mean that his first plea was made "with the understanding that the nature of the charge" was that it imposed but one sentence.

The judge's doubt that Bridges clearly understood what was going on is again expressed in his question to the attorney "There isn't any question in *his* [Bridges'] mind?" To which the reply of the attorney, "No, not at all," is not the determining thing as to whether Bridges realized that his statements meant that he understood that he would be subject to two prison sentences. That could have been resolved only by the direct question to Bridges, "Do you realize that you have pleaded guilty to two counts instead of one and that you may be sentenced to two terms of imprisonment?"

Rule 11 was preceded by the statement of the law in Smith v. O'Grady, 1941, 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859, that in considering the validity of a plea of guilty "real notice of the true nature of the charge against him [is] the first and most universally recognized requirement of due process."

Relying on Smith v. O'Grady, the Eighth Circuit in Bergen v. United States, 145 F.2d 181, at page 187, permitted the withdrawal of a plea of guilty, saying:

"We think it may be gathered from all of the cases that an accused is entitled to withdraw a plea of guilty if it fairly appears that he was in ignorance of his right and of

the consequence of his act, or if it appears that the plea was made under some mistake or misapprehension. The withdrawal should not be denied where a *proper showing for its allowance is made, merely because the defendant on a trial might or probably would be found guilty.* While the burden is on the accused to show cause for the change of his plea, the *court's discretion should be exercised liberally,* so as to promote the ends of justice and to safeguard the life and liberty of the accused, especially where the defendant is without the advice of counsel and his motion is seasonably made. And, in any case, the motion should not be denied where it is evident that the ends of justice would best be served by granting it." [Emphasis added.]

Relying directly on Rule 11 of the Seventh Circuit in United States v. Davis, 212 F.2d 264, a § 2255 proceeding in essence identical with the present case, ordered the withdrawal of a plea of guilty. There the moving convicted man, like Bridges, had three indictments against him for violation of the narcotics laws. Like Bridges, he had an attorney. The latter pleaded guilty to two of the indictments and a third was dismissed. The § 2255 motion was made by another attorney and alleged at page 266:

" * * * that he permitted the plea of guilty to be entered in reliance upon the representation of his attorney that the indictment charged him with a conspiracy and not with substantive offenses; that he was under a misconception as to the nature of the charges against him; that he was thus misled and deceived by his attorney; that, therefore, his plea of guilty was not entered voluntarily, and accordingly the judgment is void."

The opinion continues:

"It is not open to doubt that the defendant's motion alleges matters of a serious and substantial character. 'Real notice of the true nature of the charge against him' is a right granted to the accused by the Constitution and it is indispensable to a valid plea. Smith v. O'Grady, 312 U. S. 329, 334, 61 S.Ct. 752, 85 L.Ed. 859. Where it fairly appears that a plea of guilty 'was made under some mistake or misapprehension' the accused should be permitted to withdraw it. Bergen v. United States, 8 Cir., 145 F.2d 181, 187. This principle is clearly implied in Rule 11 of the Federal Rules of Criminal Procedure, 18 U.S.C. : * * * This rule is stated in mandatory language and the court is not relieved of the duty which it imposes solely *because the accused, as here, is represented by counsel of his choice.* The rule is simply and concisely stated, and it makes no such exception." [Emphasis ours.]

Not only were none of these cases considered, but the court's opinion shows that it did not consider Rule 11 at all. It does not recognize that it required the court to determine whether the record showed that the plea of guilty was made under a misapprehension due to no wrongful act of any one and that the court's discretion should be exercised "liberally" in determining whether the motion should be granted.

Instead of construing Bridges' statements liberally to determine whether he misunderstood what he had stated the opinion assumes that the plea of guilty may be set aside only where it "has been induced or procured by trick, artifice or device."

If this dissent be correct in its contention that the Court lacks jurisdiction in this § 2255 proceeding because Bridges admits guilt on one count on which he is confined and does not seek release therefrom, the District Court should be reversed and the motion ordered dismissed. If jurisdiction exists and the plea of guilty does not satisfy the requirements of Federal Rule of Criminal Procedure 11 then the judgment should be reversed and the District Court ordered to set aside the plea and proceed for a plea properly made. If all the above be ig-

nored the decision should be reversed and remanded to determine whether Bridges ever pleaded at all to the charges of indictment No. 33917 and if he did not the judgment against him should be set aside and he should be required to plead.